UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

ANTHONY PAGANAS,

                Plaintiff,

      -against-

TOTAL MAINTENANCE SOLUTION, LLC.
ARON WEBER and REGGIE TARTAGGLIONE,

           Defendants.
-----------------------------------------------------------------X

Civil Action No. _____

**COMPLAINT**

Jury trial demanded
by Plaintiff

Plaintiff, complaining of the Defendants, alleges as follows:

## NATURE OF CLAIMS

1. The Plaintiff brings claims under the Fair Labor Standards Act ("FSLA"), 29 U.S.C. §§ 207, 215 and 216, based upon Defendants' violation of the overtime wage provisions of that Act, and the supporting Federal Department of Labor Regulations 29 C.F.R. Chapter V.

2. The Plaintiff also brings claims under state law for violations of the New York Labor Law ("NYLL") Article 19, and the supporting New York Department of Labor Regulations, 12 N.Y.C.R.R. Part 142.

## PARTIES

3. Upon information and belief, the Defendant Total Maintenance Solution, LLC (hereinafter "TMS") is, upon information and belief, a domestic limited liability company duly organized and existing under and by virtue of the laws of the State of New York.

4. Upon information and belief, during periods relevant to this complaint, TMS had approximately 200 employees.

1

5. The events forming the basis of this action took place at the Main Campus of St. John's University, located at 8000 Utopia Parkway, Jamaica Estates, New York, in the County of Queens, State of New York.

6. Upon information and belief, Defendant Aron Weber ("Weber") owns and/or manages TMS.

7. Upon information and belief, Defendant Reggie Tartagglione ("Tartagglione") owns and/or manages TMS.

8. Upon information and belief, Defendant Weber has power over personnel decisions of TMS.

9. Upon information and belief, Defendant Tartagglione has power over personnel decisions of TMS.

10. Upon information and belief, Defendant Weber has power over payroll decisions of TMS.

11. Upon information and belief, Defendant Tartagglione has power over payroll decisions of TMS.

12. Upon information and belief, Defendant Weber has the power to hire and fire employees at TMS, establish and pay their wages, set their work schedules and ensure the employment records are properly maintained.

13. Upon information and belief, Defendant Tartagglione has the power to hire and fire employees at TMS, establish and pay their wages, set their work schedules and ensure the employment records are properly maintained.

14. The Plaintiff Anthony Paganas ("Paganas") is a citizen of the United States who resides in the County of Suffolk, State of New York.

15. Plaintiff was an employee of Defendants from July 2007 through May of 2014.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over this controversy pursuant to 29 U.S.C. § 207 and 215 as Plaintiff brings a federal question under the Fair Labor Standards Act.

17. This Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 as the state law claims arise out of the same case and controversy.

18. Venue is proper in this Court pursuant to 29 U.S.C. § 201-219, inasmuch as this judicial district lies in the State in which the unlawful employment practices occurred.  In addition, defendants maintain offices and conduct business in this district.

19. All of the work performed by Plaintiff had been assigned by Defendants and/or Defendants have been aware of all of the work that Plaintiff has performed.

20. Defendants have failed to record all of the time that Plaintiff has worked for the benefit of Defendants.

21. Defendants have willfully failed to pay Plaintiff all of his salary and additional payments due to him for the work performed.

## FACTS

22. Plaintiff worked at St. John's University for Defendants as a purported "Building Manager Supervisor" since July of 2007.

23. Plaintiff primarily performed routine maintenance duties and other manual labor for Defendants.

24. These duties included setting up and breaking down seating arrangements for functions at St. John's and handling routine maintenance issues at the dormitories and academic buildings at St. John's.

25. Plaintiff was a Building Manager Supervisor in name only and performed virtually no supervisory functions in the course of his work duties, as all of Plaintiff's work was directed by management of Defendants and St. John's.

26. Upon information and belief, the supervisors of Defendants, along with management of St. John's controlled all employee decisions concerning the hiring, firing and scheduling of Defendants' employee assignments.

27. Plaintiff exercised little or no discretion in the performance of his duties.

28. Upon information and belief, the largest portion of the workforce maintained by Defendants at the St. John's Main Campus consisted of porters.  The porters performed the same functions as did Plaintiff, such as routine maintenance duties and setting up and breaking down seating arrangements for functions at St. John's.

29. Upon information and belief, the porters were unionized employees who were paid an hourly wage.

30. Upon information and belief, Defendants discouraged the porters from working overtime.

31. Upon information and belief, rather than hiring more porters or paying porters for overtime work, Defendants increased the workload of the "Building Manager Supervisors," including Plaintiff.

32. The Building Manager Supervisors were non-union employees not governed by a collective bargaining agreement.

33. Plaintiff and the other Building Manager Supervisors were continuously advised by Defendants that if they could not finish their work during their scheduled shift, they would be fired.

34. These continuing threats had the practical effect of forcing Plaintiff and other Building Manager Supervisors to work overtime hours on a weekly basis and were made, upon information and belief, to increase the amount of work performed by Plaintiff at no additional costs to Defendants as Plaintiff and others similarly situated were not paid for any overtime work performed.  By reason of the continuing threats, Plaintiff was forced to come in before his scheduled working day and to stay later than his scheduled hours, all of which was known to Defendants.

35. Upon information and belie, by not paying any overtime to the Building Manager Supervisors, including Plaintiff, the actual hourly cost to Defendants for Building Manager Supervisors was less than the cost for additional porters or the cost of paying overtime to the porters.

36. Throughout his employment with Defendants and with their knowledge, Plaintiff typically worked ten hours a day, five days a week, Monday through Friday.

37. Throughout his employment with Defendants and with their knowledge, Plaintiff typically worked one or two days in excess of ten hours.

38. Throughout his employment with Defendants and with their knowledge, Plaintiff typically worked special events during weekend hours, which events could run 8 to 10 hours a day.

39. Throughout his employment with Defendants, Plaintiff was paid at the rate of $38.46 per hour by Defendants.

40. As shown on his paystub, Defendants compensated Plaintiff for forty hours per week at the hourly rate of $38.46.

41. Defendants failed to keep accurate records of the hours worked by Plaintiff.

42. At no point in time in Plaintiff's employment with Defendants did Plaintiff have the primary duty of management of the enterprise in which Plaintiff was employed, or of a customarily recognized department or subdivision thereof.

43. At no point in time in Plaintiff's employment with Defendants did Plaintiff customarily and/or regularly direct the work of two or more other employees.

44. At no point in time in Plaintiff's employment with Defendants did Plaintiff have the authority to hire or fire employees.

45. At no point in time in Plaintiff's employment with Defendants did Plaintiff make suggestions and/or recommendations as to the hiring, firing, advancement, promotion or any other changes of status of other employees.

46. At no point in time in Plaintiff's employment with Defendants did Plaintiff have the authority to make suggestions and/or recommendations as to the hiring, firing, advancement, promotion or any other changes of status of other employees.

47. All of the work performed by Plaintiff has been assigned by Defendants and/or Defendants have been aware of all the work that Plaintiff has performed.

48. Defendants have willfully failed to record all of the time that Plaintiff has worked for the benefit of Defendants.

49. Defendants have willfully failed to keep payroll and time records as required by the FLSA and New York State Wage and Hour laws.

50. Defendants have willfully misclassified Plaintiff as exempt from the requirements of the FLSA.

51. Defendants have willfully misclassified Plaintiff as exempt from the requirements of the New York State Wage and Hour laws.

52. Defendants have willfully failed to pay Plaintiff overtime wages for hours that he worked in excess of forty hours.

53. Upon information and belief, Defendants were or should have been aware that state and federal law required Defendants to pay Plaintiff for hours worked in excess of 40 hours per week, for performance of non-exempt duties under the FLSA and under New York State Wage and Hour laws.

54. Upon information and belief, Defendants were or should have been aware that Plaintiff, *inter alia*, (a) primarily performed maintenance duties and other manual labor; (b) performed little or no supervisory functions; and (c) exercised little or no discretion in the performance of his duties.

### FIRST CAUSE OF ACTION

#### Violation of Fair Labor Standards Act

55. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

56. Plaintiff was required to work on excess of forty hours a week without being compensated for those hours at any rate of pay, much less than the statutory required time and a half pay. Plaintiff was not compensated at his applicable hourly rate of pay. These practices were willful and lasted during the relevant time period.

57. This practice is a violation of the Fair Labor Standards Act.

### SECOND CAUSE OF ACTION

#### Violation of the New York Labor Law

58. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

59. Plaintiff was required to work on excess of forty hours a week without being compensated for those hours at any rate of pay, much less than the statutory required time and a half pay.  Plaintiff was not compensated at his applicable hourly rate of pay.  These practices were willful and lasted during the relevant time period.

60. This practice is a violation of the New York Labor Law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for judgment against the Defendants, jointly and severally as follows:

A.  An award of damages, including unpaid wages, in an amount to be determined;

B.  An award of liquidated damages, and/or statutory penalties where available under the Fair Labor Standards Act and New York Labor Law;

C.  Attorneys' fees as provided under the Fair Labor Standards Act and New York Labor Law;

D.  Interest at the maximum legal rate as provided by New York law;

E.  The costs and disbursements of this action; and

F.  Such other, further, and alternative relief as this Court may deem just and proper.

Dated: North Babylon, New York
        September 16, 2015

LAW OFFICE OF ROBERT S. POWERS

Robert S. Powers

*Attorney for the Plaintiff*
1540 August Road
North Babylon, New York 11703
(631) 940-7121