UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTHONY PAGANAS,<br><br>　　　　　　Plaintiff,<br><br>　– against –<br><br>TOTAL MAINTENANCE SOLUTION, LLC, ARON WEBER, and REGGIE TARTAGLIONE,<br><br>　　　　Defendants and Third-Party Plaintiffs,<br><br>　– against –<br><br>ST. JOHN'S UNIVERSITY, NEW YORK,<br><br>　　　　Third-Party Defendant. | **JUDGMENT, MEMORANDUM, AND ORDER**<br><br>15-CV-5424 |

**JACK B. WEINSTEIN, Senior United States District Judge:**

**Table of Contents**

I. Introduction ........................................................................................................... 1

II. Facts ..................................................................................................................... 1

　A. Initial Proceedings ............................................................................................ 1

　B. University's Motion to Dismiss ........................................................................ 4

　C. Defendants' Motion for Summary Judgment .................................................... 5

　D. Third-Party Defendant's Motion for Summary Judgment ................................ 5

　E. Hearing ............................................................................................................. 6

III. Law ..................................................................................................................... 6

　A. Standard for Summary Judgment ...................................................................... 6

　B. Overtime Wages ............................................................................................... 7

　　1. Fair Labor Standards Act ("FLSA") ............................................................ 7

　　2. NYLL ........................................................................................................ 10

　B. Pleading Standards under FLSA and NYLL .................................................. 11

C.     Evidence under Fed. R. Civ. P. 26 ................................................................ 12

D.     Sanctions ................................................................................................ 13

E.     Indemnification ...................................................................................... 13

IV.    Application of Law to Facts .......................................................................... 14

A.     Pleading Standard ................................................................................. 14

B.     Overtime Wages .................................................................................... 17

1.    Compensation ................................................................................... 17

2.    Primary Duty .................................................................................... 18

3.    Collective Bargaining Agreement ..................................................... 20

4.    Directing Work .................................................................................. 22

5.    Authority to Recommend Discipline .................................................. 23

C.     Fed. R. Civ. Pro. 26; Sanctions ............................................................ 24

D.     Indemnification ...................................................................................... 25

V.     Conclusion ................................................................................................... 26

## I.     Introduction

Plaintiff sued his employer, a provider of commercial janitorial and maintenance services, for overtime violations under the Fair Labor Standards Act ("FLSA") and under the New York Labor law ("NYLL"). The employer filed a third-party complaint against St. John's University, New York, with which it had contracted to provide campus cleaning services.

Defendants and third-party defendant move for summary judgment. Defendants' motion for summary judgment is entered against plaintiff, and third-party defendant's motion for summary judgment is entered against defendants. The case is dismissed.

## II.     Facts

### A.     Initial Proceedings

Plaintiff Anthony Paganas ("plaintiff") is a former employee of Total Maintenance Solution, LLC ("TMS", or, together with Aron Weber and Reggie Tartaglione, "defendants"). TMS is a New York company engaged in providing commercial janitorial and maintenance

services to customers, such as St. John's University, New York ("the University"). Decl. of Aron Weber, Feb. 4, 2016, ECF No. 26 ("Weber Decl."), at ¶ 4; TMS Rule 56.1 Statement of Material Fact, Sept. 12, 2016, ECF No. 43 ("TMS Rule 56.1 Statement"), at ¶ 2. One of TMS's customers was the University, third-party defendant. Weber Decl. at ¶ 6; TMS Rule 56.1 Statement at ¶ 5.

Plaintiff was employed by a contracting company named MacClean's in February 1983 to work on the University's campus performing, and later supervising, cleaning and maintenance work. TMS Rule 56.1 Statement at ¶¶ 6-9. Apparently, from 1983 to 2007, plaintiff continued supervision on the University's campus through various other contracting companies. *Id.* at ¶¶ 7-13. When the contracting company for which plaintiff was working lost its cleaning and maintenance contract with the University in 2007, plaintiff was hired as a building manager to supervise maintenance workers of TMS on the University's campus. *Id.* at ¶ 14. He held this position until May 1, 2014. Weber Decl. at ¶ 9; TMS Rule 56.1 Statement at ¶ 16. TMS maintained its cleaning and maintenance contract from July 2007 to May 2014. TMS Rule 56.1 Statement at ¶ 15.

As a building manager, plaintiff was responsible for overseeing the cleaning and maintenance crews of several buildings. He was also responsible for setting up equipment around the University's campus. TMS Rule 56.1 Statement at ¶ 17; Pl.'s Resp. to Statement of Material Fact, Sept. 26, 2016, ECF No. 53 ("Paganas Rule 56.1 Statement"), at ¶ 17; Hr'g Tr., Feb. 17, 2016 ("Feb. 17 Hr'g Tr."), at 9:20-10:1, 14:2-4.

Plaintiff claims that in the course of supervising the cleaning and maintenance staff, he performed some of the cleaners' work himself. Feb. 17 Hr'g Tr. at 13:8-15:24. It is primarily

upon claims of assisting with hands-on actual cleaning and maintenance work that plaintiff's suit rests.

Plaintiff's salary was $80,000 per year. By a separate agreement with the University he was paid an extra $250 each time he oversaw setup of the University's athletic facilities during a basketball game. TMS Rule 56.1 Statement at ¶¶ 18-19. He contends that TMS, not the University, paid him "wages" he earned in connection with the basketball games. Paganas Rule 56.1 Statement at ¶ 19. Except for the extra money he earned during basketball games, plaintiff's paychecks were always for the same amount, even though the number of hours he worked each week varied. TMS Rule 56.1 Statement at ¶ 21.

TMS employed both unionized and non-unionized workers. It did not keep time records for non-unionized employees. *Id.* at ¶ 26. Plaintiff was a non-unionized employee. *Id.* At no point during his employment with TMS did plaintiff sign time sheets; TMS alleges, without contradiction, that it did not keep records of the number of hours he worked each week. *Id.* at ¶¶ 23-27.

In September 2015, plaintiff filed a complaint against TMS and its owners, alleging that TMS had purposely discouraged its unionized employees who were paid on an hourly basis from working overtime, and instead increased non-unionized workers' – including plaintiff's – workload without paying him overtime. Compl., Sept 16, 2015, ECF No. 1 ("Compl."), at ¶¶ 28-34. Allegedly, defendants advised plaintiff that if he did not finish his work during his scheduled shift, he would be fired. *Id.* at ¶¶ 33-34. Plaintiff alleges he typically worked ten hours per day, five days a week, and, on one or two days each week, he worked in excess of ten hours. *Id.* at ¶¶ 36-37; Decl. of Anthony Paganas, Sept. 26, 2016, ECF No. 54, ("Paganas Decl."), at ¶ 1.

His paystubs indicate that he was paid an hourly rate of $38.46 for forty hours a week, even when he worked additional hours. Compl. at ¶¶ 39-40. He asserts that TMS willfully failed to keep accurate payroll and time records for him as required by the FLSA and the NYLL, misclassified him as a supervisor exempt from the requirements of the FLSA and the NYLL, and failed to pay him extra sums for overtime. *Id.* at ¶¶ 48-52.

Defendants argue that plaintiff fails to state a claim upon which relief may be granted: he was exempt from the overtime requirements of the FLSA and the NYLL. Answer and Third-Party Compl., Sept. 16, 2015, ECF No. 9 ("Answer"), at ¶¶ 61-64. They filed a third-party complaint against the University asserting that, under the contract between TMS and the University ("Service Agreement"), TMS is entitled to reimbursement and indemnification for plaintiff's claim should it result in damages. *Id.* at ¶¶ 75-81.

### B. University's Motion to Dismiss

The University moves to dismiss defendants' complaint, arguing that under the Service Agreement TMS indemnified it against claims such as the one at issue. Mem. of Law in Supp. of Def. St. John's University, New York's Mot. to Dismiss Claims of Third-Party Pls. Pursuant to Fed. R. Civ. P. 12(b)(6), Jan. 8, 2016, ECF No. 17 ("Third-Party Def.'s Mot. to Dismiss").

Under the Service Agreement, TMS provided maintenance engineers and supervisors such as plaintiff to carry out "Basic Services" on the University's campus. Decl. of Scott M. Cooper at Ex. A, ECF No. 18-1. TMS paid its employees; under the Service Agreement, the University in turn paid TMS a "Basic Fee" for the value of the Basic Services and an additional "Management Fee" of 3% of the gross total cost of the Basic Services:

> [The University] shall pay [TMS] a Management Fee equal to 3% of the gross total cost of the Basic Services ("Gross Total Cost"). The Gross Total Cost shall be the sum of: (i) all costs related to the payment of Maintenance Engineers and Supervisors, (ii) all costs expended for uniforms, equipment and supplies in furtherance of

performing the Basic Services, (iii) all costs for consultants retained at the direction and approval of [the University]., (iv) all costs for insurance required under this Agreement ("Basic Fee"). The Basic Fee shall be payable every four (4) weeks.

*Id.* at § 2.1.

The Service Agreement includes an indemnification clause:

> In addition to any liability or obligation of [TMS] to [the University] under other provisions of this Agreement or at law, *[TMS] shall* to the fullest extent permitted by law, *indemnify*, defend, and hold *[the University]*, its Board of Trustees, officers, employees, Service Companys [sic] and servants harmless from and *against all claims*, suits, damages, liabilities, losses, demands, costs and expenses, including reasonable attorneys' fees and disbursement, and punitive damages of every kind and nature, by or *on behalf of any person*, firm, association or corporation, *in connection with [TMS]'s performance under this Agreement*, including any and all claims by the Maintenance Employees and Supervisors concerning their hiring, employment, or separation therefrom, and claims by the Union or its various benefits funds in any form (including without limitation in court, arbitration, or before a government agency). [TMS]'s obligation to indemnify [the University] shall survive the expiration or termination of this Agreement. Nothing in this Section 4.2 or elsewhere in the Agreement shall create or give third parties any claim or right of action against [the University].

*Id.* at § 4.2 (emphasis added). The University argues that this clause indemnifies it against the type of liability TMS alleges here. *See* Third-Party Def.'s Mot. to Dismiss; Fed. R. Civ. P. 12(b)(6); Feb. 17 Hr'g Tr., at 6:14-7:1.

The University's motion to dismiss on the pleadings was denied. Order, Feb. 17, 2016, ECF No. 29.

### C.     Defendants' Motion for Summary Judgment

Defendants seek summary judgment for failure to satisfy the minimum evidentiary requirements for an overtime claim. *See* Mem. in Supp. of Defs. TMS, Aron Weber and Reggie Tartaglione for Summ. J., Sept. 11, 2016, ECF No. 44 ("Defs.' Mot."); Fed. R. Civ. P. 56.

### D.     Third-Party Defendant's Motion for Summary Judgment

The University moves for summary judgment. It seeks to dismiss all of TMS's third-party indemnification claim. Mem. of Law in Supp. of St. John's University, New York's Mot. for Summ. J. as to Claims of Third-Party Pls. Pursuant to Fed. R. Civ. P. 56, Sept. 12, 2016, ECF No. 47 ("Third-Party Def.'s Mot."). It argues that the Service Agreement between it and TMS does not require the University to indemnify TMS; rather, it requires that TMS indemnify and hold harmless the University from all claims "in connection with [TMS's] performance under the Agreement, including all claims by the . . . Supervisors concerning their . . . employment." Third-Party Def.'s Mot. at 2.

TMS agrees that the indemnity clause obligates TMS to defend and indemnify the University from claims of *third parties* against TMS. *See* Mem. in Opp'n to Mot. of Third-Party Def. St. John's University, New York for Summ. J., Sept. 24, 2016, ECF No. 51 ("Defs.' Opp'n Mem."), at 7. But in the instant case, it contends, the University violated its contract with TMS, so indemnification obligations to the University do not apply. *Id.* at 5-8.

### E. Hearing

The parties appeared at an evidentiary hearing on motions for summary judgment. *See* Hr'g Tr., Oct. 17, 2016 ("Oct. 17 Hr'g Tr."); Hr'g Tr., Oct. 18, 2016 ("Oct. 18 Hr'g Tr.").

## III. Law

### A. Standard for Summary Judgment

Summary judgment is appropriate when the movant shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party, resolving all ambiguities and drawing all reasonable inferences against the movant." *Hernandez v. Int'l Shoppes, LLC*, 100 F. Supp. 3d 232, 247 (E.D.N.Y. 2015), *appeal dismissed* (June 18, 2015). The substantive law

governing the case will identify those facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

No genuinely triable factual issue exists "if, on the basis of all the pleadings, affidavits and other papers on file, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, it appears that the evidence supporting the non-movant's case is so scant that a rational jury could not find in its favor." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996). If the movant meets this burden, the non-moving party must provide "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (internal quotation marks and citation omitted).

### B. Overtime Wages

#### 1. Fair Labor Standards Act ("FLSA")

The Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*, seeks to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). Section 207 includes the FLSA's overtime requirements. It provides that non-exempt covered employees shall be paid at a rate not less than one and one-half times the regular rate for any hours worked over forty within a workweek:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified *at a rate not less than one and one-half times the regular rate at which he is employed*.

29 U.S.C. § 207(a)(1) (emphasis added).

## a. Executive Exemption

The overtime compensation requirement under the FLSA does not apply to "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). The FLSA does not define "bona fide executive, administrative, or professional" employment; instead, it directs the Secretary of Labor to define those terms "from time to time by regulations." *Id.*; *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 559 (2d Cir. 2012).

The Department of Labor ("DOL") issued relevant regulations in 2004, determining that "[t]he term 'employee employed in a bona fide executive capacity' ... shall mean any employee":

> (1) *Compensated on a salary basis at a rate of not less than $455 per week* . . . ; (2) Whose *primary duty is management* of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) Who *customarily and regularly directs the work of two or more other employees*; and (4) Who *has the authority to hire or fire other employees or whose suggestions and recommendations* as to the hiring, firing, advancement, promotion or any other change of status of other employees *are given particular weight.*

29 C.F.R. § 541.100(a) (emphasis added); *Ramos*, 687 F.3d at 559-60.

"Management" typically includes:

> [A]ctivities such as interviewing, selecting, and *training of employees*; setting and adjusting their rates of pay and hours of work; *directing the work of employees*; maintaining production or sales records for use in supervision or control; *appraising employees' productivity* and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; *disciplining employees*; planning the work; determining the techniques to be used; *apportioning the work* among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; *providing for the safety and security* of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102 (emphasis added); *Callari v. Blackman Plumbing Supply, Inc.*, 988 F. Supp. 2d 261, 276 (E.D.N.Y. 2013).

"Primary duty" means "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a); *Callari*, 988 F. Supp. 2d at 277.

> In determining whether the exempt work is the employee's primary duty, factors that can be considered are (1) the *relative importance of the exempt duties as compared with other types of duties*; (2) the *amount of time spent performing exempt work*; (3) the *employee's relative freedom from direct supervision*; and (4) the *relationship between the employee's salary and the wages paid to other employees* for the kind of nonexempt work performed by the employee.

29 C.F.R. § 541.700(a) (emphasis added).

The DOL has ruled that an employee who performed a mix of exempt and non-exempt work can fall under the overtime requirement:

> Concurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption if the requirements of § 541.100 are otherwise met. Whether an employee meets the requirements . . . is determined on a case-by-case basis and based on the factors set forth in [the definition of "primary duty"]. Generally, exempt executives make the decision regarding when to perform nonexempt duties and remain responsible for the success or failure of business operations under their management while performing the nonexempt work. In contrast, the nonexempt employee generally is directed by a supervisor to perform the exempt work or performs the exempt work for defined time periods. An employee whose primary duty is ordinary production work or routine, recurrent or repetitive tasks cannot qualify for exemption as an executive.

29 C.F.R. § 541.106.

"Consideration of *these [exempt] factors* is a *highly fact-intensive inquiry*, to be made on a case-by-case basis in light of the totality of the circumstances." *Clougher v. Home Depot U.S.A.,*

*Inc.*, 696 F. Supp. 2d 285, 290 (E.D.N.Y. 2010) (emphasis added) (internal quotation marks and citations omitted).

### b. Standard for Exemptions

The burden of showing that an exemption applies as a defense to overtime claims is on the employer. *See Reiseck v. Univ. Comm. of Miami, Inc.*, 591 F.3d 101, 104 (2d Cir. 2010).

Whether an employee falls within an exemption under the FLSA "is a mixed question of law and fact." *Charlot v. Ecolab, Inc.*, 136 F. Supp. 3d 433, 448 (E.D.N.Y. 2015) (quoting *Myers v. Hertz Corp.,* 624 F.3d 537, 548 (2d Cir.2010); *Leevson v. Aqualife USA, Inc.*, No. 14-CV-6905, 2016 WL 6651425 (E.D.N.Y. Nov. 10, 2016) (same); *Harper v. Gov't Emps. Ins. Co.,* 754 F. Supp. 2d 461, 463 (E.D.N.Y. 2010) ("The question of how an employee spends his time is factual, while the issue of whether such activities render the employee exempt from the FLSA's overtime provision is a question of law."); *Callari*, 988 F. Supp. 2d at 27 (internal quotation marks and citations omitted) ("The question of what an employee's duties are is one of fact, but the question of whether those activities fall into an FLSA exemption is a question of law.").

To determine whether an exemption applies, the trier will consider the employee's actual work activities; it may not rely solely on the employer's characterization of those activities through a job title or job description. *Charlot*, 136 F. Supp. at 448 (internal quotation marks and citation omitted). Since the FLSA is a remedial statute, its exemptions are construed narrowly against the employer. *Id.*

### 2. NYLL

The NYLL includes an overtime provision. Section 142-2.2 of the New York Rules and Regulations states, "[a]n employer shall pay an employee for overtime at a wage rate of one and

one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of 29 U.S.C. 201 et seq. . . ."  12 N.Y.C.R.R. § 142-2.2.

### a. Executive Exemption

The NYLL, like the FLSA, does not apply to "executives."  N.Y. Lab. Law § 651(5)(c) (McKinney 2010).  "Because New York's overtime provisions mirror [ ]or expressly adopt federal wage law . . . federal courts evaluate New York's executive exemption by reference to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.,* and its attendant regulations."  *Clougher*, 696 F. Supp. 2d at 289 n.5 (citing *Zheng v. Liberty Apparel Co.,* 355 F.3d 61, 78 (2d Cir. 2003)).

### b. Standard for Exemptions

Like the FLSA, determining whether an exemption under the NYLL applies requires application of both law and fact.  *Koljenovic v. Marx*, 999 F. Supp. 2d 396, 399 (E.D.N.Y. 2014). The FLSA and the NYLL are frequently analyzed together, because as multiple courts have found, the NYLL's overtime requirement incorporates the FLSA's exemptions.  *See, e.g.*, *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 145 (2d Cir. 2013) (citing 12 N.Y.C.R.R. § 142–2.2); *Gold v. New York Life Ins. Co.,* No. 09–CV–3210, 2011 WL 2421281, at *3 (S.D.N.Y. May 19, 2011) (stating that the NYLL's overtime regulation "is defined and applied in the same manner as under the Fair Labor Standards Act"); *Gorey v. Manheim Servs. Corp.,* 788 F. Supp. 2d 200, 205 (S.D.N.Y. 2011) (internal quotation marks and citation omitted) ("New York overtime requirements are subject to the exemptions of the FLSA.").

### B.    Pleading Standards under FLSA and NYLL

The Court of Appeals for the Second Circuit has held that "in order to state a plausible FLSA claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."  *Lundy v. Catholic Health System of Long*

*Island*, 711 F.3d 106, 114 (2d Cir. 2013); *see also Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013). Allegations of hours worked can not be "speculative," but "an approximation may help draw a plaintiff's claim closer to plausibility." *Lundy*, 711 F.3d at 114 n.7.

A plaintiff must plead "particular facts sufficient to raise a plausible inference of an FLSA overtime violation." *DeJesus v. HF Management Services, LLC*, 726 F.3d 85, 89 (2d Cir. 2013). *Lundy* does not require a plaintiff to plead their overtime claims with mathematical precision:

> [A]n invitation to provide an all-purpose pleading template alleging overtime in "some or all workweeks." It was designed to require plaintiffs to provide some factual context that will "nudge" their claim "from conceivable to plausible." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. While this Court has not required plaintiffs to keep careful records and plead their hours with mathematical precision, we have recognized that it is employees' memory and experience that lead them to claim in federal court that they have been denied overtime in violation of the FLSA in the first place. Our standard requires that plaintiffs draw on those resources in *providing complaints with sufficiently developed factual allegations*.

*Dejesus*, 726 F.3d at 90 (emphasis added).

### C.    Evidence under Fed. R. Civ. P. 26

Under Rule 26 of the Federal Rules of Civil Procedure, a party must disclose documents that may be used "to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(ii). A party is obligated to timely supplement or correct its initial Rule 26 disclosures, and its responses to interrogatories and document demands, "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A); *Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 67 (E.D.N.Y. 2012); *see also Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 75 (W.D.N.Y. 2011) (using an objective "reasonably should know" standard when a party "learns" under Rule 26(e) that "its

prior discovery responses [are] materially inaccurate or incomplete.").  "The purpose of Rule 26(e) is to prevent the 'sandbagging' of a party with new evidence at trial or on a motion." *Lujan*, 284 F.R.D. at 68 (citation omitted).

### D.  Sanctions

A party violating its Rule 26 obligations to supplement disclosures is subject to sanctions under Rule 37(c).  *Lujan*, 284 F.R.D. at 68; Rule 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing or at trial, unless the failure was substantially justified or is harmless.").

"Preclusion is a harsh remedy that should only be imposed in rare situations;" courts "enjoy broad discretion in deciding whether and how to fashion a sanction pursuant to Rule 37." *Lujan*, 284 F.R.D. at 68 (internal quotation marks and citations omitted).  When determining whether to preclude evidence, courts consider "(1) the party's explanation for the failure to comply with the discovery rules; (2) the importance of the precluded evidence; (3) the prejudice suffered by the opposing party as a result of having to prepare to address the new evidence; and (4) the possibility of a continuance."  *Id.*

### E.  Indemnification

"[I]ndemnification agreements are strictly construed and a court may not find a duty to indemnify absent manifestation of a 'clear and unmistakable intent' to do so."  *Georgia-Pac. Consumer Prod., LP v. Int'l Paper Co.*, 566 F. Supp. 2d 246, 251 (S.D.N.Y. 2008) (*quoting Olin Corp. v. Consolidated Aluminum Corp.,* 5 F.3d 10, 15 (2d Cir.1993)); *see also, e.g., Schiavone Constr. Co. v. County of Nassau,* 717 F.2d 747, 751 (2d Cir. 1983) (internal citation omitted)

("An indemnity clause must reflect the unmistakable intent of the parties as to the scope of its coverage.").

"The coverage of an indemnification provision must be determined based on the wording of the specific agreement." *Luna v. Am. Airlines*, 769 F. Supp. 2d 231, 240 (S.D.N.Y. 2011). If the wording of the agreement contemplates indemnification of third-party claims, and third-party claims were a possibility at the time of contracting, additional contextual evidence is required to read into the clause that the parties also intended to indemnify claims between the contracting parties themselves. *Id.* at 244 ("Absent specific contractual language authorizing indemnification in suits between the contracting parties . . . the court will enforce such an obligation if it is apparent that at the time of contracting the parties had no reason to anticipate the possibility of the indemnitee being faced with third-party claims," but "if third-party claims were possible at the time of contracting and the contractual language did not evidence the parties' intent regarding the indemnification . . . in suits between them, the courts have refused to award such expenses as indemnification."); *see also Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996).

In reading the entire agreement, a court will attempt to "give full meaning and effect to all of its provisions." *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.,* 424 F.3d 195, 206 (2d Cir. 2005) (citation omitted).

## IV. Application of Law to Facts

### A. Pleading Standard

Defendants argue that plaintiff's claim for overtime wages must be dismissed because he failed to plead the details of his claim with sufficient particularity. *See* Defs.' Mot. at 4-6. In his complaint, plaintiff alleged that he "typically worked" ten hours per day on five days per week,

"typically worked" one or two days in excess of ten hours each week, and "typically worked" special events during weekend hours.  Compl. at ¶¶ 36-38.

Although defendants correctly point out that one of the reasons the Court of Appeals for the Second Circuit in *Lundy* dismissed plaintiffs' overtime claim was because they approximated the hours they "typically" or "periodically" worked, plaintiff's claim in the instant case is more specific.  In *Lundy*, "the allegations . . . failed because of arithmetic: tallying the plausible factual allegations, [the court] could not get beyond forty hours in any given week, and therefore to a plausible claim for overtime."  *Dejesus*, 726 F.3d at 88-89 (citing *Lundy*, 711 F.3d at 114).  In *Nakahata*, "the allegations lacked the specificity required, because though they raised the possibility of an overtime claim, absent any allegation that Plaintiffs were scheduled to work forty hours in a given week, they did not state a plausible claim for relief."  *Dejesus*, 726 F.3d at 89 (citing *Nakahata,* 723 F.3d at 201) (internal quotation marks omitted).  In *Dejesus*, the plaintiff "provided less factual specificity than did the plaintiffs in *Lundy* or *Nakahata* . . . [and] did not estimate her hours in any or all weeks or provide any other factual context or content."  *Dejesus*, 726 F.3d at 89.  The court pointed out that plaintiff's complaint in that case "was devoid of any numbers to consider beyond those plucked from the statute. She alleged only that in some or all weeks she worked more than forty hours a week without being paid 1.5 times her rate of compensation."  *Id.* (internal quotation marks omitted).

To meet the pleading standard, it is sufficient for a plaintiff to allege a pattern of overtime work instead of providing the specific hours worked.  Plaintiff's allegations that "she regularly worked forty hours per week, and provided sufficient estimates of how much additional time she worked each week – namely 1 ½ to 2 hours per week" was sufficient to "describe the pattern of her overtime, but uncompensated work.  Thus, her claim is distinguishable from the 'threadbare'

allegations dismissed by the Second Circuit in *Lundy, Nakahata* and *Dejesus,* and other district courts in the Circuit following *Dejesus.*" *Leon v. Port Washington Union Free Sch. Dist.*, 49 F. Supp. 3d 353, 358 (E.D.N.Y. 2014).

Here, plaintiff sufficiently alleged that tallying the number of hours he worked each week would exceed forty hours. Compl. at ¶¶ 36-38. He provided a calendar from the University he received during discovery. The calendar lists specific events, as well as the date and time during which they occurred: plaintiff marked the events at which he worked. Paganas Decl. at Ex. A-E, ECF No. 54.

Based on these notations, a trier could find that plaintiff worked specific hours in excess of forty hours per week during September and October of 2009. *See Mahoney v. Amekk Corp.*, No. 14-CV-4131, 2016 WL 6585810, at *12 (E.D.N.Y. Sept. 30, 2016), *report and recommendation adopted*, No. 14-CV-4131, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016) (internal citations omitted) ("In contrast to *Lundy*, *Nakahata* and *DeJesus*, in which the Second Circuit dismissed FLSA-based overtime claims as speculative and insufficiently detailed, Plaintiff provides the Court with specific information regarding the overtime hours she worked. Plaintiff alleges that she regularly worked 42 hours per week throughout the course of her employment. . . . [her] allegations demonstrate her overtime claim without the need for any inference because Plaintiff's set schedule exceeded forty hours per workweek."); *Tackie v. Keff Enterps. LLC*, 14-CV-2074, 2014 U.S. Dist. LEXIS 130148, at *7 (S.D.N.Y. Sept. 16, 2014) (finding that plaintiff in FLSA case adequately alleged an overtime claim where "she worked a fairly regular schedule of forty hours per week, and she occasionally worked more than forty hours per week.").

Plaintiffs' claims in *Lundy*, *Nakahata*, and *DeJesus* were insufficient to survive a motion to dismiss on the pleadings, unlike here, where summary judgment is the issue. On summary judgment, the moving party must show an absence of genuine issues as to any material fact. *Anderson*, 477 U.S. at 256. Plaintiff has proffered sufficient specific evidence that he worked in excess of forty hours each week. He has raised a genuine question of fact. The Court of Appeals for the Second Circuit recognizes "the frequent difficulty for plaintiffs in such cases to determine, without first having access to the defendant's records, the particulars of their hours and pay in any given time period." *Dejesus*, 726 F.3d at 86. Here, plaintiff has produced enough evidence to survive summary judgment on this issue.

### B. Overtime Wages

Whether plaintiff can recover under the FLSA and the NYLL for overtime wages depends on whether he qualifies as a non-exempt "employee" under the FLSA and NYLL. To determine whether plaintiff is an executive under the federal and state overtime requirements, the court applies the four-part test promulgated by the DOL. 29 C.F.R. § 541.100(a); *Ramos*, 687 F.3d at 559-60.

### 1. Compensation

As to the first prong, plaintiff and defendants agree that plaintiff earned not less than $455 per week. Defs.' Rule 56.1 Statement at ¶ 18; Pl.'s Rule 56.1 Statement at ¶ 18 (plaintiff earned $80,000 per year). Effective December 1, 2016, this minimum salary requirement was to be raised to $913 per week. 29 C.F.R. § 541.600(a); *but see Nevada v U.S. Dep't of Labor*, 16-CV-00731 (E.D. Tex. Nov. 22, 2016) (blocking enforcement of the regulation raising the minimum salary requirement of the executive exemption).

Under the NYLL, the weekly salary requirement to meet the definition of a "bona fide executive" was $543.75 for services performed between July 24, 2009 and December 30, 2013,

and $600 for services performed between December 31, 2013 and December 30, 2014. 12 N.Y.C.R.R. § 142-2.14(e). Plaintiff's annual salary of $80,000 for work performed from July 2007 to May 2014 far exceeds this requirement.

As defendants correctly point out, the fact that plaintiff was paid an extra $250 for his work during basketball games – regardless of whether he was paid by the University or TMS – does not affect his claims. *See* Mem. Submitted on Behalf of Defs. TMS, Aron Weber and Reggie Tartaglione to Assert that Pl. Anthony Paganas was an "Exempt" Employee, Oct. 25, 2016, ECF No. 71, at 9. A worker is still considered an exempt executive if he receives additional compensation in addition to his salary that is at least $455 per week:

> An employer may provide an exempt employee with *additional compensation without losing the exemption or violating the salary basis requirement*, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis. . . . Similarly, the exemption is not lost if an exempt employee who is guaranteed at least $455 each week paid on a salary basis also receives additional compensation based on hours worked for work beyond the normal workweek. Such additional compensation may be paid on any basis (e.g., flat sum, bonus payment, straight-time hourly amount, time and one-half or any other basis), and may include paid time off.

29 C.F.R. § 541.604(a) (emphasis added).

### 2. Primary Duty

The second prong requires that plaintiff's primary duty must have been the "management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof." 29 C.F.R. § 541.100(a).

"Management" has been defined to include "activities such as . . . directing the work of employees; . . . planning the work; . . . apportioning the work among the employees." 29 C.F.R. § 541.102; *Callari*, 988 F. Supp. 2d at 276.

Plaintiff's own description of his work indicates that his responsibility as a TMS employee was the management of a substantial part of the workforce providing cleaning services on the campus. Plaintiff testified that he "ran" several buildings on the University's campus and on the University's off-campus sites. Oct. 18 Hr'g Tr. at 5:11-16. His responsibilities were "[e]verything from set-ups . . . making sure the places were clean . . . [and] inspecting the buildings for deficiencies." *Id.* at 7:20-8:1. "Set-ups" included readying specific rooms for meetings and moving tables and chairs. *Id.* at 8:2-10. These tasks were carried out by building services personnel, also referred to as "cleaners" or "porters." Their job was to physically clean the buildings plaintiff supervised. It included mopping, sweeping, emptying the trash, and following specific cleaning routines. *Id.* at 8:16-13:18.

One to two cleaners were typically assigned to each of the buildings plaintiff was supervising. *Id.* at 28:18-22. In total, plaintiff estimated that he "had about six people" working in the buildings he was supervising. *Id.* at 28:23-24. He explained that he was one of five or six campus TMS building managers, each of whom had several "people working for them." *Id.* at 30:1-25. Richard Rossi, who was TMS's director of site management from December 2007 until March 2011, agreed that plaintiff had "anywhere from one to three employees per building and [ ] probably had a cluster of five or six buildings under his supervision," and that "[a]t various times, anywhere from six or seven to as many as 15" employees reported to plaintiff. *Id.* at 42:5-19, 45:20-46:6.

Plaintiff admitted that he attended regular morning management meetings. *Id.* at 13:19-21. When management gave him a work order, either during these meetings or by placing it in his mailbox, plaintiff selected the cleaners who would assist in carrying out the order, gave detailed instructions to them over his radio, and ensured that his orders were carried out. *Id.* at

13:22-15:14, 29:8-25. He testified that he had the authority to direct the cleaners in their work "if it had to do with [his] buildings." 19:2-5. If there was a shortage in cleaners in the buildings plaintiff was responsible for, as when cleaners called in sick or were on vacation, he had the authority to reshuffle the personnel in his buildings. *Id.* at 21:7-23. When management distributed work orders, "it would be the building manager's responsibility to decide who performed those tasks." *Id.* at 46:15-24. Monitoring buildings for deficiencies – and instructing employees to rectify deficiencies when plaintiff found them – constitutes "planning the work."

Plaintiff was responsible for "the performance of office or non-manual work directly related to the management or general business operations" of TMS, and "exercise[d] discretion and independent judgment in performing his . . . duties." 29 CFR § 541.200(a)(2); *Lichtman v. Martin's News Shops Mgmt., Inc.*, 917 N.Y.S.2d 222, 225 (N.Y. App. Div. 2011). *See also Guinup v. Petr-All Petroleum Corp.*, No. 5:07-CV-1120, 2010 WL 3338800, at *9 (N.D.N.Y. Aug. 23, 2010) (internal quotation marks and citation omitted) ("This factor considers only the employee's *relative* freedom from supervision.").

Plaintiff's supervision of employees and management was his primary duty. It was his job to inspect the buildings for which he was responsible and to supervise the work of the cleaners. Feb. 17 Hr'g Tr. at 14:2-15:11. He testified that he carried out physical cleaning tasks himself – and during the February 17 hearing claimed that 90 percent of his work was non-supervisory physical cleaning. *Id.* at 15:8-11. This testimony is not credited. It is found to be untrue.

### 3. Collective Bargaining Agreement

The existence of a collective bargaining agreement that governed the work of the cleaners makes clear that plaintiff was not doing manual labor but was a supervisor. *Id.* at 15:8-11. Many of the cleaners belonged to the Service Employees International Union Local 32BJ

("Local 32BJ").  Under their collective bargaining agreement with TMS, non-bargaining unit employees were prohibited from performing bargaining unit work, namely, physical maintenance and cleaning services.  Article 1 of the collective bargaining agreement states:

> Work performed pursuant to the terms of this collective bargaining agreement shall not be performed by persons not covered by the collective bargaining agreement . . . This Agreement shall apply to all service employees employed in any facility, including residential buildings, in the City of New York and in such other areas that currently are and may come within the geographical jurisdiction of the Union.

Letter from Perry Heidecker at Ex. 1, Oct. 20, 2016, ECF No. 70-1 ("Ex. 1 to Oct. 20 Letter"), at Article 1, §§ 1-2.  "The Union may order a work stoppage, strike or picketing *where fairly claimable bargaining unit work is being performed by persons outside of the bargaining unit*."  *Id.* at Article VII, § 3 (emphasis added).

Plaintiff was not expected to perform cleaning routines himself.  "Those are performed by the front line 32BJ associates."  Oct. 18 Hr'g Tr. at 44:15-21.  Under the collective bargaining agreement with the 32BJ union, non-unionized personnel such as plaintiff were not permitted to perform bargaining unit work.  *Id.* at 44:22-45:5.  Plaintiff's own testimony demonstrates that his "primary" and almost all his "most important" work was supervisory.  *Callari*, 988 F. Supp. 2d at 277 (citing 29 C.F.R. § 541.700(a)).

The collective bargaining agreement confirms that physical cleaning was exclusively the responsibility of the Local 32BJ cleaners.  Performing a smidgeon of physical labor does not defeat the executive exemption; what matters is whether the business "could not function without plaintiff[ ] performing [his] managerial responsibilities."  *Martinez v. Hilton Hotels Corp.*, 930 F. Supp. 2d 508, 526 (S.D.N.Y. 2013); *see also Donovan v. Burger King Corp.*, 675 F.2d 516, 521 (2d Cir. 1982) ("[T]he principal responsibilities of [plaintiffs], in the sense of being most

important or critical to the success of the [business], are managerial."); *Guinup,* 2010 WL 3338800, at *8 (determining that "while Plaintiff also performed a number of non-managerial tasks . . . Plaintiff's managerial functions were more important to the success of [the business] than her nonmanagerial functions.").

Even if plaintiff violated the collective bargaining agreement and performed some of the exempt work himself – which the court finds he did not – he still qualifies as an exempt executive who performed a mix of duties, the physical component being minimal. *Callari*, 988 F. Supp. 2d at 277 ("[W]hile 'employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement[,] [t]ime alone [ ] is not the sole test' and 'exempt employees need not spend more than 50 percent of their time performing exempt work.'" (quoting 29 C.F.R. § 541.700(b))).

Plaintiff had a much higher compensation than the cleaners, who received between $22.648 and $23.423 per hour. *See* Letter of Perry Heidecker, Oct. 14, 2016, ECF No. 68; Ex. 1 to Oct. 20 Letter, at Article X; *Callari*, 988 F. Supp. 2d at 277; *Martinez*, 930 F. Supp. 2d at 525.

The facts overwhelmingly defeat plaintiff's claims: "the major emphasis on the character of the employee's job as a whole" shows that plaintiff acted as a supervisor whose primary duty was management. 29 C.F.R. § 541.700(a); *Martinez*, 930 F. Supp. at 523-24; *Mullins v. New York,* 653 F.3d 104, 106 (2d Cir.2011). Plaintiff meets the second prong of the test.

### 4. Directing Work

The third prong of the test requires that an exempt executive "customarily and regularly directs the work of two or more other employees." 29 C.F.R. § 541.100(a); *Ramos*, 687 F.3d at 559-60.

Plaintiff's testimony regarding his job responsibilities proves that he regularly and customarily directed the work of other employees. Oct. 18 Hr'g Tr. at 19:2-5 (testifying that he

had the authority to direct the cleaners in their work "if it had to do with [his] buildings."). As discussed more fully in *supra*, section IV.B.2, he testified – and defendants confirmed – that he was in charge of a number of buildings, and that one or two cleaners were assigned to each of these buildings and reported directly to plaintiff for supervision. *See* Oct. 18 Hr'g Tr. at 28:18-24, 30:1-25, 42:5-19, 45:20-46:24.

Plaintiff attended management meetings every morning and carried out the work orders received during these meetings by choosing which cleaners would perform which tasks, and instructing them. *Id.* at 13:19-15:14, 29:8-25. He also had the authority to determine which employees would cover in the event a building was short-staffed, and directed their activities. *Id.* at 21:7-23.

Directing the cleaners' tasks was the essence of the work that plaintiff "normally and recurrently performed every workweek." 29 C.F.R. § 541.701; *Bellone v. Kraft Power Corp.*, No. 15-CV-3168, 2016 WL 2992126, at *5 (E.D.N.Y. May 23, 2016).

### 5.  Authority to Recommend Discipline

To qualify for the executive exemption, plaintiff must have had "the authority to hire or fire other employees," or his "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees" must have been "given particular weight." 9 C.F.R. § 541.100(a); *Ramos*, 687 F.3d at 559-60.

Plaintiff claims that he did not have the authority to hire and fire employees. Oct. 18 Hr'g Tr. at 23:17-18. But management testified that plaintiff had the authority to recommend discipline of employees, and in fact made recommendations of discipline in individual cases. *Id.* at 46:7-10. Mr. Rossi testified that plaintiff did in fact recommend discipline of employees, and made those recommendations to upper management. *Id.* at 46:17-14. Plaintiff did not contradict

this testimony.  *Id.* at 23:13-16, 47:4-16.  He has not raised a genuine dispute as to a material fact.  *Hernandez*, 100 F. Supp. 3d at 247.

Defendants have demonstrated that no genuinely triable issue of fact exists regarding plaintiff's proper classification as an executive exempt from the overtime requirements of the FLSA and NYLL.  His evasive answers at the evidentiary hearing were unconvincing.

There are several factors not contemplated in the four-prong test, which, while not dispositive, are relevant in the instant case.  Plaintiff wore a shirt and tie when he was on duty, whereas the cleaners he supervised wore a uniform issued by TMS.  Oct. 18 Hr'g Tr. at 16:2-7, 44:5-9.  In this case, plaintiff's not wearing a uniform signified that he was not a cleaner and was instead a building manager.  He was part of the management level of TMS.

When plaintiff was asked why he sometimes worked later than he had to, he testified that no one had instructed him to do so, but he stayed late because took pride in his work, namely, how each of the buildings for which he was responsible looked.  Oct. 18 Hr'g Tr. at 37:4-23.  This testimony reveals the commendable loyalty of a long-time employee who had a relatively high position within the company.  Plaintiff worked for TMS for nearly seven years, received a large salary, did not use time sheets, had no hour requirement, and undertook detailed supervisory work.  His position within TMS meets both the statutory definition and spirit of the executive exemption.

### C.      Fed. R. Civ. Pro. 26; Sanctions

On February 17, 2016, defendants sent plaintiff discovery requests for all documents memorializing his hours worked during the relevant period.  Aff. of Perry S. Heidecker, Sept. 27, 2016, ECF No. 55, at ¶¶ 9-10.  Plaintiff answered in his July 14, 2016 responses and in his March 15, 2016 deposition that he was currently not in possession of such documents.  *Id.* at ¶¶ 11-12, 15.  In his opposition to defendants' motion, plaintiff included a calendar he obtained

through discovery from the University.  Paganas Decl. at Ex. A-E, ECF No. 54.  Plaintiff was obligated to supplement his responses when he received this additional and corrective information.  Fed. R. Civ. P. 26(e)(1)(A); *Lujan*, 284 F.R.D. at 68.

Defendants seek sanctions for failure of plaintiff to comply with discovery requests.  The court enjoys broad discretion in imposing or denying sanctions; preclusion is a "harsh remedy." *Lujan*, 284 F.R.D. at 68.  Sanctions here are inappropriate. Because summary judgment with dismissal is granted, the issue of excluding plaintiff's calendar of events from evidence at trial is moot.

### D.  Indemnification

TMS filed a third-party complaint against the University, arguing that it is liable to TMS for any damages plaintiff might recover from defendants.  Answer at ¶ 79.  In their opposition to the University's motion for summary judgment, defendants maintain that TMS is entitled to indemnification and reimbursement, not because of plaintiff's third-party claim, but because the University breached the Service Agreement with TMS by failing to pay the overtime demanded by plaintiff to TMS.  Defs.' Opp'n Mem. at 6-7.

The indemnification clause in the agreement at issue is construed strictly.  It will be enforced only if there is a clear and unmistakable intent of the parties as to its coverage.  *Olin Corp.,* 5 F.3d at 15.  Here, the specific wording of the clause states that *TMS* "shall . . . indemnify, defend, and hold [the University] . . . harmless from and against all claims, suits, damages, liabilities, losses, demands, costs and expenses" brought by any person "in connection with [TMS's] performance under this Agreement, *including any and all claims by the Maintenance Employees and Supervisors concerning their hiring, employment, or separation therefrom*."   Decl. of Scott M. Cooper at Ex. A, ECF No. 18-1, at § 4.2 (emphasis added).

This clause unambiguously and specifically contemplates TMS indemnifying the University for third-party claims an employee brings against TMS. When drafting the Service Agreement, the parties had reason to believe that TMS might face lawsuits by its employees regarding their employment, and specifically provided for this possibility by including the words "Maintenance Employees and Supervisors" in the indemnification clause. *Id.*; *Luna*, 769 F. Supp. 2d at 240, 244. Indemnification runs to, and not from, the University. *See* Oct. 17 Hr'g Tr.

Defendants' argument that by refusing to grant the University's motion to dismiss on the pleadings, the court has bound itself to dismiss the University's motion for summary judgment, is misguided. Summary judgment may be granted after denying a motion to dismiss; the procedures are subject to different standards and occur at a different stage. "The doctrine of law of the case is discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment." *Maraschiello v. City of Buffalo Police Dep't*, 709 F.3d 87, 97 (2d Cir. 2013) (internal quotation marks and citation omitted) ("And in any event, the doctrine would not preclude a district court from granting summary judgment based on evidence after denying a motion to dismiss based only on the plaintiff's allegations. . . . It was not error for the court to revisit a conclusion based on factual allegations taken as true at the motion to dismiss stage, and determine, based on undisputed evidence at the summary judgment stage, that no reasonable jury could find that the type of action discussed . . . occurred.").

## V.     Conclusion

The University's motion for summary judgment is granted. Defendants' motion for summary judgment is granted. All of plaintiff's claims are dismissed.

No costs or disbursements are assessed: the case was brought and prosecuted in a good faith misunderstanding of the law and facts.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Date: December 5, 2016
Brooklyn, New York